Good morning. May it please the court. I'm Tony Behrens from Glendale, Arizona. I represent the plaintiffs' appellants, Pedro and Rosa Portillo. This case is relatively simple legally. Factually, it is perhaps not so simple. The issue for the court, as I have framed it, is basically, did the district judge properly employ the facts and inferences from the facts in the favor of my clients in determining qualified immunity as the short-circuit escape hatch for the defendant police officer in this case. And I can go into specific detail as to what those facts were and the inferences. I suggest that they're laid out in the briefs. They are, counsel, very much, very well indeed. But what was the clearly established law that Montoya violated? I'm sorry, I didn't. What was the clearly established law that Montoya violated? The clearly established law was the Fourth Amendment, prohibition against using excessive force in dealing with a citizen in this context and dealing with an arrest for a disorderly conduct charge. And in particular, his use of pepper spray, being unprovoked and unnecessary in the circumstances, and his use of a flashlight as a weapon numerous times striking Pedro without necessity. Those are the clearly established parameters. And, of course, as this court and the Supreme Court has held, there does not need to be a specific on-all-fours scenario exactly duplicating this in order for the police to be held accountable. What is the closest case that you have to the extent of the force used in this case where there was a holding that that force was excessive? I believe I've cited the usage of pepper spray, Headwaters case, I believe. Also, since the briefing of this case, and by the way, this event happened almost five years ago, so there's been a lot of time passed in the meantime. But this court recently, last January 10, 2005, in Smith v. City of Hemet, discussed a case with a, I believe it was an en banc panel, concerning similar issues involving the use of pepper spray and also involving the use of a police dog. That wasn't clearly established five years ago, was it? Well, I suggest as well, Your Honor, that this case is clearly established in that a police officer cannot use pepper spray simply because he's angry at somebody. Just a second, counsel. Let me direct you to the undisputed statements of fact, which were filed by Officer Montoya and by you in the district court. The local rule said that specific facts had to be stated by the plaintiff that contradicted the facts stated by the defendant. Your filing, as I remember it, said, without provocation or any reason, Officer Montoya used the pepper spray. That is a conclusory statement. You could use that in argument, but it's not a specific fact. That being so, shouldn't all the facts leading up to the pepper spray stated by Officer Montoya, which are not disputed by specific facts by you in your statement of undisputed facts, be taken as true? I don't think so, Your Honor. Why? And the reason, if I may, for one thing, the response concerning statement of facts specifically alluded to facts and inferences. The without provocation certainly is an inference fairly drawable. That's an argument from a fact or from the absence of a fact. But you were required under local rule 1.1011 to state specific facts. What specific facts did your statement make which contradicted the statements of Officer Montoya, by the way, keeping in mind that your man pleaded guilty to disorderly conduct? And under Heck v. Humphreys, we cannot make a finding contrary to the essential elements of that charge, which include at least disorderly conduct. Well, concerning Heck v. Humphrey, that was alluded to also in the Smith v. City of Hemet case, and the particular is that that only applies if the conviction necessarily implies that there cannot be a finding of civil rights liability. And in this particular case, the basis for the disorderly conduct conviction, the factual basis, was never established. Well, aren't we required to take the least noxious element of disorderly conduct and say that at least was established by the guilty plea? Well, perhaps, but then you get to the issue of the timing of that. And, again, as was established in the Smith v. City of Hemet case and its predecessors, just because somebody commits a crime, especially a misdemeanor, does not mean that they can have excessive force used against them. I agree with you. Counsel, could we go back to the question that Judge Nelson asked and that I asked and that's been clarified by Judge Bail? What was the case authority in five years ago that controls our decision regarding the use of excessive force? You quoted some more recent cases, but in the context of the occurrence and the time of the occurrence, what case are you relying upon? Well, certainly the basic case law concerning the best case. I'm sorry? What is your best case? Sanford v. Motts, for instance, concerning the use of excessive force. Is that your best case? Your Honor, I can't give you a grade A, B, C, or D. The law was very axiomatic. I mean, from the Graham case, the concept of a police officer not being able to use force that is outside of the realm of reasonableness based upon a variety of circumstances, from the charge being asserted and arrested for to the conduct of the circumstances of the person being arrested, all of those things go into the parameters, and I suggest we don't have to have a specific case of a parent confronting police officers after they've stopped his child. No, but we have to have a case that guides us to the conclusion that you're asking us to make, and that's what I was asking you for. And, again, I suggest that that is case law replete in the history. I don't have a specific case with specific similar facts. Your Honors, I would like to keep the remainder of my time for rebuttal. All right. Thank you, counsel. Thank you. Good morning, Your Honors. My name is Lori Burke. I'm with the law firm of Shugart, Thompson & Kilroy in Phoenix, Arizona. May it please the Court. Your Honors hit it right on the head. There is no or there was no clearly established law on November 12th of 2000 that would have given Officer Montoy a fair notice that his conduct was in any way violative of Mr. Portillo's constitutional rights. What about Lalonde v. County of Riverside? That was a 2000 case, and it involved pepper-spraying the individual's face and eyes for 20 to 30 minutes, even though the individual had surrendered to the police. Do you find that distinguishable? I do, Your Honor. Officer Montoya did not pepper-spray Mr. Portillo for 20 to 30 minutes. Mr. Portillo acknowledges that he was arguing with Officer Montoya, that he was angry and upset, that he was telling the officers this is bullshit. He was in very close proximity to Officer Montoya to the point that Officer Montoya needed to create distance and push Mr. Portillo away from him. Because he felt concerned for his safety and the safety of Officer Spears, he deployed his O.C. spray consistent with City of Phoenix policy. He hit Mrs. Portillo. If he had hit only Mr. Portillo, that would be one thing. And the other thing that bothered me about this case, he hit him with a flashlight, not once, but again and again and again, which raises a question about whether this was excessive. Sure. I'll address both of those points, Your Honor. With respect to Mrs. Portillo, there is no dispute that the canister of O.C. spray malfunctioned, and that is why O.C. got on both Mrs. Portillo, Officer Montoya, and Officer Spears. He did not direct the O.C. spray at her. She acknowledges she was in close proximity to her husband and was trying to pull him away. Do you agree that Mrs. Portillo, whose claim was dismissed without prejudice in exercise of discretion by the district court and has appealed, her claim is told and she can still file a state law negligence action? I don't recall her state law claim being dismissed, Your Honor. It was dismissed without prejudice because after the federal claims were dismissed on summary judgment, the court decided in its discretion not to exercise permanent jurisdiction. Right. Those are told, Your Honor. The district court. The state court claims. She still has a claim, doesn't she? She does have a state. She can still file in the state court. Yes, she does have a state court claim, as does Mr. Portillo. With respect to the flashlight strikes, Your Honor, there is no factual dispute that Mr. Portillo was resisting arrest. There is no dispute that there was a melee going on here. There were over 30 young men in their 20s, some adult males, threatening the officers, confronting the officers. This was a situation in which the officers felt that their lives were at serious risk. This was a neighborhood that they were very familiar with. They had been shot at in the past, or they specifically hadn't, but other officers had been shot at. Officer Spears had had rocks thrown at her by people in this neighborhood. They needed to get this situation resolved as quickly as possible, and there is no factual dispute asserted that Mr. Portillo was resisting arrest. So I don't want to waste the Court's time. If the Court has any other questions, I think those are the points. Was there any clearly established law? There was not. That would give Officer Montoya any indication that his conduct was violative of the constitutional rights. Sanford v. Motts is the best case that appellant's counsel could come up with to support his position, but that's a case in which force was used after the claimant was handcuffed, and Mr. Portillo acknowledges that force was never used on him once he was placed in custody. The force was used in order to gain custody of him. The Headwaters case was a very different case than the present case. It's factually distinguishable. There, as Your Honors well know, the officers were dealing with protesters who were very passive, and the officers took Q-tips and actually placed O.C. in the eyes of these individuals. That is not the case here. Officer Montoya properly deployed his O.C. spray consistent with City of Phoenix policies. Is it your point that under Saucier v. Katz neither the constitutional violation nor the clearly established prong exists here? I think Your Honors could decide as a matter of law that excessive force was not utilized here like the Court did in the Jackson v. City of Bremerton case. But even if Your Honors believe and conclude that there is a factual dispute on that issue, when we get to the second prong, there is no clearly established law that would have put him on notice. So in a qualified immunity analysis, we assume that the facts as alleged are true? That's correct, Your Honor. So to the extent those facts alleged in plaintiff's statement of facts in opposition to summary judgment do create an issue of fact, then you're correct. We're not so concerned with the allegations as we are with the evidence presented to the Court below. In other words, the statement of facts under the local rules must be backed by specific facts shown in the record. So allegations are not really our concern. This isn't a 12b6 motion, right? That's correct, Your Honor. And I would note that some of the facts alleged, like Your Honor noted, are argument. Others are unsupported. And I can give you an example of that. The very first statement of fact asserted by plaintiff is that Mr. Portillo did not yell at the police officers as he inquired about why his son had been detained. But if you go to the deposition testimony that's attached to their statement of facts, he acknowledges he was angry and upset when he approached the officers. He acknowledged that his voice is a little deep, and he acknowledged that he has a naturally strong voice whenever he addresses someone. So I think that's contrary to the ---- And didn't he plead guilty to disorderly conduct? And he did, which at a minimum would be making unreasonable noise. And we've supplied, Your Honors, in our brief with the elements of disorderly conduct. But, Counsel, you're not asserting, are you, that making unreasonable noise would justify the use of force? No. It goes into that helps or that's just one factor to take into consideration in the totality of circumstances that one must look at to determine whether excessive force was used. But we've got this big group of people, including Mr. Portillo, confronting, threatening the officers and putting them in a position where they feared for their safety. And the officers did what they were trained to do, consistent with policy and consistent with the law. All right. Thank you, Counsel. Your thought all? Thank you. Your Honors, during my break time there, I was able to find the particular factual references, and those are at Excerpts 205. I'll just read those quickly. Each one of these are supported by deposition transcript copies as well. Pedro Portillo did not yell at the police officers as he inquired about why his minor son had been detained by the police officers. Two, without provocation or justification, David Montoya used pepper spray multiple times upon Pedro Portillo and Rosa Portillo. Three, after being initially pepper sprayed by David Montoya, Pedro Portillo and Rosa Portillo tried to leave the area and return to their home. Four, David Montoya prevented Pedro Portillo from leaving the area. Five, David Montoya attempted to punch Pedro Portillo. Six, David Montoya again pepper sprayed Pedro Portillo. Seven, David Montoya used his flashlight as a weapon to strike Pedro Portillo multiple times. Eight, Pedro Portillo tried to guard against being hit in his genital area by blocking flashlight strikes with his hands and arms. And nine, David Montoya used pepper spray against Pedro Portillo and Rosa Portillo when Rosa Portillo sought to protect her husband from being beaten with the officer's flashlight. I submit that there are sufficient factual issues when viewed in the light most favorable to the plaintiffs. All right. Thank you, counsel. You have exceeded your time. The case just argued is submitted for a decision by the court.
judges: D.W. Nelson, Rawlinson, Bea